```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
JEAN A. MARTIN,

                    Plaintiff,                              **NOT FOR PUBLICATION**

        - against -                                                **ORDER**
                                                            19-CV-1505 (PKC) (LB)
DARICE GUZMAN PIOTROWSKI;
ANDREW CECERE, C.E.O.; TERRANCE R.
DOLAN, C.F.O.; and U.S. BANK TRUST,
N.A.,

                    Defendants.
-----------------------------------------------------x
```

PAMELA K. CHEN, United States District Judge:

On March 15, 2019, Plaintiff Jean A. Martin ("Plaintiff") filed this fee-paid *pro se* civil action against Defendants Darice Guzman Piotrowski, Andrew Cecere, Terrance R. Dolan, and U.S. Bank Trust, N.A. (collectively, "Defendants"). For the reasons that follow, the complaint is dismissed.

## BACKGROUND

The complaint, filed on a form complaint for civil cases, asserts both federal question jurisdiction and diversity jurisdiction. (*See* Complaint ("Compl."), at 4.) Plaintiff alleges that both she and Defendant Piotrowski reside in New York State. (*Id.*) In the space to identify the federal question, Plaintiff references the "Treaty of Peace and Friendship 1786/87 A.D./1836 A.D." and Articles IV and VII of the United States Constitution regarding the Full Faith and Credit Clause and the ratification of the Constitution. (*Id.*) In an addendum, Plaintiff also cites the "Civil Rights Act" and "Disability Act," banking regulations, and provisions of the United States Criminal Code related to fraud and racketeering. (*Id.* at 6.)

Plaintiff states that the amount in controversy is $506,578.84, the price at which her property "was fraudulently sold on Feb. 6th, 2019 after all parties were notified of my status, Index #1208/09." (*Id.* at 5.) In an attached Statement of Claim, Plaintiff alleges that she is a "sovereign by law," "a secured party creditor," and "paramount title holder by due Course." (*Id.* at 7.) She asserts that she cannot be bound by any contract and that she never entered into a contract with Defendant U.S. Bank Trust, N.A. (*Id.*) She alleges that Defendants "have sent threatening communications via U.S. Mail . . . and continuously send evidence to support fraudulent loan service contract." (*Id.*) She further states: "On February 6, 2019, Darice Guzman Piotrowski fraudulently sold property already secured in Trust to U.S. Bank Trust, N.A." (*Id.*) Plaintiff seeks a total of $9 million in compensatory and punitive damages. (*Id.* at 9–10.)

Additionally, Plaintiff attaches exhibits. One exhibit is the first page of a Declaration of Trust creating a living trust for the benefit of Plaintiff's children. (*Id.* at 13.) It does not describe the property placed into the trust. Another exhibit purports to be a document from the United States Department of State and bears the alleged signature of the United States Secretary of State and an unreadable signature of an "Assistant Authentication Officer, Department of State."[1] (*Id.* at 19.) According to the complaint, these exhibits certify that an attached document is "under the seal of the Department of State of the State(s) of New York." (*Id.*) No document is attached. Plaintiff also attaches a UCC Financing Statement dated September 21, 2018 naming herself as both the debtor and secured party. (*Id.* at 22.) The United States Department of Defense and "North America Water and Power Alliance" are listed as additional debtors. (*Id.* at 23.) Plaintiff submits a March 12, 2019 printout of a webpage from commercial website Streeteasy.com that

---

[1] Plaintiff is warned about the serious criminal consequences of submitting fraudulent documents and forged signatures to the Court. *See* 18 U.S.C. § 912.

2

lists details of real property located at 102-42 188th Street and states that she owns the property. (*Id.* at 47–49.) The submission indicates that property taxes were paid by Plaintiff from tax years 2009-2010 through 2014-2015, but does not identify any official government records on which the information is based. (*Id.* at 49.)

A series of the exhibits submitted by Plaintiff relates to Index No. 12608/2009, a foreclosure action in the New York Supreme Court, Queens County. (*Id.* at 25–27.) One document is a deed filed on February 6, 2019 in the New York City register's office indicating that real property at 102-42 188th Street in Queens was sold by Defendant Piotrowski to Defendant U.S. Bank Trust, N.A. (*Id.* at 30.) According to documents publicly available on the website for the New York State Unified Court System, the foreclosure action in Index No. 12608/2009 was fully resolved with a judgment of foreclosure and sale entered on December 28, 2017 in the Supreme Court of the State of New York, Queens County, and with a motion to vacate the judgment and other relief denied on July 17, 2018 and January 9, 2019. *See Nationstar Mortg., LLC v. Martin*, No. 12608/2009, https://iapps.courts.state.ny.us/webcivil/FCASSearch (last visited Apr. 8, 2019).

### STANDARD OF REVIEW

The Court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation and citation omitted). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual

3

allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations, brackets, and citation omitted).

Regardless of whether a plaintiff has paid the filing fee, a district court has the inherent power to dismiss a case, *sua sponte*, if it determines that the action is frivolous or the court lacks jurisdiction over the matter. *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363–64 (2d Cir. 2000); Fed. R. Civ. P. 12(h)(3). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000); *see* Fed. R. Civ. P. 12(h)(3). Federal subject-matter jurisdiction is available only when a "federal question" is presented, 28 U.S.C. § 1331, or when the plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332. "Federal question jurisdiction may be properly invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law." *State of New York v. White*, 528 F.2d 336, 338 (2d Cir. 1975).

**DISCUSSION**

Plaintiff alleges both diversity jurisdiction and federal question jurisdiction, but the complaint fails to establish either. The diversity statute, 28 U.S.C. § 1332, provides federal jurisdiction over state law causes of action involving conflicts between citizens of different states. In this case, complete diversity of citizenship does not exist between Plaintiff and all Defendants, as both Plaintiff and Defendant Piotrowski are alleged to be citizens of New York State. *See Handelsman v. Bedford Vill. Assocs.*, 213 F.3d 48, 51 (2d Cir. 2000) ("Diversity jurisdiction requires that all of the adverse parties in a suit be completely diverse with regard to citizenship." (quotation and ellipsis omitted)).

Additionally, Plaintiff alleges the violation of various statutes and sections of the U.S. Code. However, she fails to allege with particularity that any Defendants violated any federal law or constitutional provision. She references civil rights and disability statutes, but does not claim to have been discriminated against on the basis of race, ethnicity, disability, or any other protected characteristic covered by these laws. She conclusorily states "Color of Law," but has not alleged that any Defendant is or has conspired with state actors to act "under color of state law," which would be required under 42 U.S.C. § 1983. *See Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (maintaining a § 1983 action requires that "(1) the conduct complained of [was] committed by a person under color of state law; and (2) the conduct complained of . . . deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the United States"); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (quotations omitted)).

Section 1985(1) of Title 42 applies to certain private conspiracies to interfere with federal officers and federal or state court proceedings, but Plaintiff does not allege that any of Defendants entered into any such conspiracy. She suggests a $25,000,000 fine for violation of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et. seq.*, but does not allege that Defendants violated any provisions of that Act. Similarly, she references the Violent Crime Control and Law Enforcement Act, 42 U.S.C. § 14141, but has not alleged any "pattern or practice of conduct by a law enforcement officer" that could be enforced by the United States Attorney General under this Act.[2]

Plaintiff invokes multiple sections of the United States Criminal Code, including provisions related to witness tampering (18 U.S.C. § 1512), deprivations of civil rights (18 U.S.C.

---

[2] These provisions were transferred to 34 U.S.C. § 12601, effective September 1, 2017.

§ 243), accessory to criminal activity (18 U.S.C. § 3), racketeering (18 U.S.C. § 1961), and mail fraud (18 U.S.C. § 1341). Generally, a private individual has no constitutional right nor standing to file criminal charges against another individual or government official. *See Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Moreover, violations of the Criminal Code may not serve as the basis for a civil cause of action unless the statute includes an express or implied private right of action. *See Cort v. Ash*, 422 U.S. 66, 79 (1975) (no private right of action exists under criminal statutes unless there is a clear statutory basis for such an inference); *Storm-Eggink v. Gottfried*, 409 F. App'x 426, 427 (2d Cir. 2011) (summary order) (no private right of action under § 242); *Kashelkar v. Bluestone*, 306 F. App'x 690, 692 (2d Cir. 2009) (summary order) (18 U.S.C. § 341 does not create a private right of action); *Zahl v. Kosovsky*, No. 08-CV-8308 (LTS) (THK), 2011 WL 779784, at *10 (S.D.N.Y. Mar. 3, 2011) (no private right of action under § 1512), *aff'd*, 471 F. App'x 34 (2d Cir. 2012). And although the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1691, *et seq.*, provides a private right of action to any person injured by a violation of the activities prohibited by RICO, including mail fraud and obstruction of justice, *Kim v. Kimm*, 884 F.3d 98, 99 (2d Cir. 2018), Plaintiff has not alleged[3] that Defendants violated 18 U.S.C. § 1341 (mail fraud) or 18 U.S.C. § 1512 (witness tampering).

---

[3] In fact, the only factual allegations Plaintiff makes are that Defendants "fraudulently sold" her property, and sent threatening communications and "evidence to support fraudulent loan service contract" via the United States Postal Service. (Compl., at 7.) The allegation about threatening communications could suggest a claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, which prohibits certain conduct engaged in by debt collectors. The FDCPA defines "debt collector" as any person who uses interstate commerce "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692(a)(6). However, the FDCPA "limits its reach to those collecting the dues of another and does not restrict the activities of creditors seeking to collect their own debts." *Munroe v. Specialized Loan Servicing*, No. 14-CV-1883 (MKB) (LB), 2016 WL 1248818, at *5 (E.D.N.Y. Mar. 28, 2016) (quotations omitted).

Finally, Plaintiff's assertion that her property was fraudulently sold is a direct challenge to a state-court foreclosure action, and this Court is therefore precluded from review. This Court cannot interfere in any foreclosure action where a judgment of foreclosure has already been entered, because federal intervention in state-court matters would disrupt the federalism concerns underlying the *Rooker-Feldman* doctrine. This principle, growing out of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), holds that federal district courts lack subject-matter jurisdiction to hear cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005).

In *Hoblock v. Albany County Board of Elections*, 422 F.3d 77 (2d Cir. 2005), the Second Circuit clarified the four requirements for application of the *Rooker-Feldman* doctrine:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced—i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Id.* at 85 (quotations and brackets omitted). Each of these conditions is met in this case. First, Plaintiff—a defendant in the foreclosure action—lost in state court when the judgment of foreclosure was entered. Second, Plaintiff's injury, loss of legal rights in the property, was caused by the state-court judgment. Third, Plaintiff requests that this Court review the foreclosure action

---

In this case, the Defendants named in the complaint are the receiver in the foreclosure proceeding and employees of the financial institution that purchased the property at the foreclosure sale. As these are not debt collectors trying to collect a debt from Plaintiff, these Defendants are not suable under the FDCPA. Accordingly, the FDCPA does not provide a basis for this Court's jurisdiction.

for fraud and overturn the judgment. Fourth, the judgment was entered on December 28, 2017 and Plaintiff's motion to vacate the judgment and other relief was denied on July 17, 2018 and January 9, 2019—well before Plaintiff filed the instant lawsuit in federal court. For these reasons, *Rooker-Feldman* applies, and this Court lacks jurisdiction to overturn the state court judgment of foreclosure.

## CONCLUSION

For the reasons set forth above, this action is dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3).[4] The Clerk of Court is respectfully directed to close this case and enter judgment in Defendants' favor. Although Plaintiff has paid the filing fee to initiate this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: April 8, 2019
 Brooklyn, New York

---

[4] The Court is mindful that, if a liberal reading of the complaint "gives any indication that a valid claim might be stated," the Court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). The Court has considered whether to allow Plaintiff to amend her complaint to omit the non-diverse party in order to allow her to proceed under diversity jurisdiction. However, the only state-law claim that Plaintiff raises involves the foreclosure action. As the Court is precluded by the *Rooker-Feldman* doctrine from addressing this issue, such an amendment would be futile. Leave to amend is therefore denied.